ALEXIS LAMARRE *vs.* GUARANTEE CONSTRUCTION COMPANY.

Middlesex.     December 12, 1912. — May 19, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* In cutting rivets.

In an action by a bricklayer for personal injuries from being struck by the head of a "cold cut" alleged to have been used negligently by two employees of the defendant, who were cutting rivets on a steel tank above the roof of a building on the side of which the plaintiff was working in the employ of another person, there was evidence that the rivets were being cut by one of the defendant's employees holding the cold cut against a rivet while the other employee struck the head of the cold cut with a maul, that many such blows were necessary to cut through a rivet head, that generally when a rivet head was nearly cut through the employee holding the cold cut warned the employee with the maul not to strike so hard, that at the time of the accident not nearly the number of blows had been struck that usually were required to cut through a rivet, that the employee with the maul received no warning from the employee holding the cold cut, and struck with full force a blow that cut off the rivet head, whereupon the rivet head and the head and handle of the cold cut all went flying and the head of the cold cut landed on the plaintiff below. *Held,* that the jury were warranted in finding that the defendant's employee holding the cold cut was negligent in not warning the employee with the maul that the rivet head was nearly cut through.

TORT for personal injuries sustained by the plaintiff on June 14, 1911, on the premises of the Massachusetts Cotton Mills at Lowell, where the plaintiff was working as a bricklayer in the employ of one Conlon on a staging on the outside of a boiler house and was struck on the head by the iron head of a tool called a "cold cut" by reason of the alleged negligence of one or both of two employees of the defendant who were at work on a steel tank above the roof of the boiler house. Writ dated July 7, 1911.

In the Superior Court the case was tried before *Stevens,* J. At the close of the plaintiff's evidence, which is described in the opinion, the defendant asked the judge to make the following rulings:

"1. On all the evidence the plaintiff cannot recover.

"2. Unless the jury is satisfied by a fair preponderance of the evidence that one of the defendant's employees hit the wooden handle on the 'cold cut,' the plaintiff cannot recover.

"3. Unless the jury shall find that Mansfield [mentioned in the opinion] was negligent, and that his negligence caused the plaintiff's injury, there must be a verdict for the defendant."

The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $9,000. The defendant alleged exceptions.

*H. D. McLellan,* for the defendant.

*S. E. Qua,* for the plaintiff.

LORING, J. In this case the defendant rested on the plaintiff's evidence and asked for a ruling that as matter of law he had not made out a case. The facts shown by the plaintiff's evidence in substance were as follows: The plaintiff was a bricklayer employed by one Conlon who had a contract for the brickwork included in the erection of a boiler house for the Massachusetts Cotton Mills. At the time of the accident the plaintiff with other employees of Conlon was at work on a staging outside the boiler house, laying bricks. Some thirty or forty feet above, but not directly above, these bricklayers, two employees of the defendant were at work cutting off rivet heads from the outside of a steel tank. This tank rested on a steel frame or lattice work "up in the air," above the level where the roof of the building was to be when finished. "This tank had been considered finished at one time," but later it was decided to increase its size. For this purpose the rivet heads which bound together two sheets of iron were being cut off. These rivets had been driven through from the inside and "were headed on the outside." The method adopted for cutting off the heads of these rivets on the outside of the tank was this: One of the defendant's employees held a "cold cut or cold chisel" against the rivet head while another struck the head of the cold cut with a maul until the rivet head was cut through. The cold cut was "about the shape of a sledge hammer, except that one edge was

pointed instead of square." By "one edge was pointed" is to be understood that one edge was sharp. The handle was about fourteen inches and the head about five inches long. At the time of the accident one Bourbonniere was holding the cold cut. One Mansfield was employed in striking the head of the cold cut. Mansfield testified that it generally took from seventeen to eighteen blows to cut through a rivet head, but in case of the rivet head here in question, on his striking the seventh or eighth blow the rivet was cut through, the handle of the cold cut broke, and all three, namely, the rivet head and the head and the handle of the cold cut went flying. The head of the cold cut landed on the plaintiff, causing the injuries here complained of. Mansfield further testified that the employee holding the cold cut generally warned him not to strike so hard when the rivet was nearly cut through; that in case of the rivet head here in question he got no warning from Bourbonniere and so struck with full force the blow which cut off the rivet head and sent flying the head and handle of the cold cut. There was evidence that the handle looked like a good handle and in good condition before the accident. It broke just outside the cold cut head, and the break was "kind of a splinter break." In addition it appeared that Bourbonniere was by trade "a laboring man" who "generally followed the masons," but had been "doing iron work" for two months before the accident, and "the only experience he had had cutting rivets was three or four times" during those two months. Both Bourbonniere and Mansfield testified that the blow which cut the rivet head and broke the handle of the cold cut landed fairly on the head of the cold cut.

The jury were warranted in finding that the purpose of the practice (testified to by Mansfield) of the holder of the cold cut warning the striker that the rivet head was nearly cut through was to avoid the happening of some such thing as that which happened in the case at bar by a blow of the usual force being struck when the rivet head was nearly cut through. And the jury were warranted in finding that Bourbonniere was negligent in not seeing that this rivet head was nearly cut through and notifying Mansfield not to strike a full blow. The defendant has assumed that the cause of the injury was the breaking of the handle of the cold cut. But the jury were warranted in finding that the cause of the injury

was the cold cut being knocked out of Bourbonniere's hands by the usual shoulder blow given when the rivet was nearly cut through, and that the breaking of the handle was an immaterial incident, not the cause, of the injury.

It follows that all three rulings asked for were properly refused. The only exceptions being to the refusal to give these rulings, the entry must be

*Exceptions overruled.*